St. Francis Hospital, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 98575. Promulgated October 18, 1940.

*Edward J. I. Gannon, Esq.*, for the petitioner.
*Orris Bennett, Esq.*, for the respondent.

OPINION.

MELLOTT: The Commissioner determined that petitioner was obligated to deduct and withhold certain amounts of tax under section 144 of the Revenue Act of 1928 and section 143 of the Revenue Act of 1932. Based upon the information contained in certain "Ownership Certificates" (Form 1000 Treasury Department), on file in the Department, he prepared annual returns for the petitioner under the provisions of section 3176 of the Revised Statutes as amended, and, having determined that petitioner had failed to file annual returns, as required by sections 144 and 143, *supra*, added 25 percentum of the tax as provided in section 291 of the Revenue Acts of 1928 and 1932. He accordingly determined deficiencies and additions to tax in the following amounts:

| Year | Deficiency | 25% addition |
|---|---|---|
| 1930 | $110.44 | $27.61 |
| 1931 | 985.82 | 246.46 |
| 1932 | 974.41 | 243.60 |
| 1933 | 938.32 | 234.58 |
| Total | 3,008.99 | 752.25 |

The proceeding was submitted upon the following stipulation of facts:

1. St. Francis Hospital of Pittsburgh is a non-profit corporation without capital stock for the purpose of establishing and maintaining a hospital in the City of Pittsburgh, incorporated under a decree of the Court of Common Pleas of Allegheny County, Pennsylvania, at No. 188 January Term, 1887 under the name of St. Franciscus Hospital of Pittsburgh. The said name was subsequently changed by order of court to St. Francis Hospital of Pittsburgh. The sisters of the Third Order of St. Francis of the Diocese of Pittsburgh is likewise a corporation not for profit incorporated under a decree of the Court of Common Pleas of Allegheny County, Pennsylvania.

2. At and prior to July 21, 1930 the said Sisters of the Third Order of St. Francis of the Diocese of Pittsburgh held in trust for the said St. Francis Hospital the real estate on which the hospital and other buildings were erected, and for the purpose of erecting additional buildings at the request of the said hospital

corporation executed a mortgage to the Union Trust Company of Pittsburgh in the sum of $1,100,000, with interest at the rate of 5½% per annum, of record in the Recorder's Office of said County in Mortgage Book, Vol. 2252, page 47, which mortgage contains a provision as follows:

"said payments of principal and interest to be made in gold coin of the United States of America of or equal to the present standard of weight and fineness at the office of said The Union Trust Company of Pittsburgh, Pittsburgh, Pennsylvania, and without deduction from either principal or interest for or on account of any tax or taxes (excepting inheritance or succession taxes and except the excess of any Federal income tax over two per cent. (2%) per annum), and without deduction for any tax or taxes up to but not in excess of four (4) mills per annum on the principal amount thereof, assessed against or payable by the holder or holders thereof, or any part thereof, under the laws of the State of Pennsylvania, which said Sisters or said The Union Trust Company of Pittsburgh, or any assignee or assignees of said The Union Trust Company of Pittsburgh, may be required or permitted to pay thereof or to retain or deduct therefrom under any present or future laws of the United States of America, or of the Commonwealth of Pennsylvania, or of any county or municipality thereof, said Sisters agreeing to pay any such tax or taxes insofar as they may lawfully do so;"

said mortgage being executed in accordance with an order of the Court of Common Pleas of Allegheny County, Pennsylvania, at No. 582 October Term, 1930.

3. On March 1, 1933 the hospital corporation having requested a conveyance of the property so held in trust, the said Sisters of the Third Order of St. Francis of the Diocese of Pittsburgh executed a conveyance therefor, reciting that the property had been held in trust for the hospital corporation, the said deed being of record in Deed Book, Vol. 2480, page 380. The said conveyance is made specifically subject to the said mortgage to the Union Trust Company, which the hospital corporation expressly assumed and agreed to pay in accordance with the terms and conditions thereof. The said mortgage was at all times considered by all of the parties as a debt of the hospital corporation and all payments of interest thereon were made by said hospital corporation.

4. Each semi-annual installment of interest during the tax years involved herein was paid by the said St. Francis Hospital in a single check to the Union Trust Company. Subsequent to the delivery of the mortgage and on or about August 21, 1930 the said Union Trust Company executed and retained in its own records a "Declaration of Trust" [a copy of the document is attached to the stipulation and marked "Exhibit A". It refers to the mortgage described above and states that the "mortgagee above named does hereby certify that the above recited mortgage and its accompanying bond, and all moneys secured thereby, are held in trust for the several estates interested therein to the extent of the contribution of each of said trust estates towards the principal thereof, as shown by the books of original entry, ledgers, vouchers, card and other records of the trust department pertaining thereto."] but no assignment or declaration of trust as to said mortgage was ever entered of record in the Recorder's Office of Allegheny County, Pennsylvania, and no notice of any such declaration was ever given to said St. Francis Hospital, unless as a matter of law receipt of the ownership certificates, Treasury Form 1000, referred to in paragraph 6 constitutes such notice. Said declaration remained in effect during the tax years involved herein.

5. After the delivery of said mortgage the said Union Trust Company allocated various portions thereof to various estates of individuals for which it was guardian, trustee, agent or other fiduciary by notation upon its records that certain funds of these estates were invested in said mortgage, some of which

estates were so small the income thereof was less than the income tax exemption.

6. As the semi-annual installments of interest were paid to said Union Trust Company the said trust company distributed among the various estates referred to in paragraph 5 such portions of the interest payments as were applicable to such estates by reason of the allocation of their funds to said mortgage; and sent to the Sisters of the Third Order of St. Francis of the Diocese of Pittsburgh at their headquarters, or Mother House, in Shaler Township, Pennsylvania, a number of forms (ownership certificate, Treasury Form 1000), showing the payments to such various estates, * * *.

7. The Union Trust Company of Pittsburgh is a domestic corporation organized under the laws of the commonwealth of Pennsylvania and has its principal office in the City of Pittsburgh, Allegheny County, Pennsylvania.

Sections 144 and 291 of the Revenue Act of 1928 are shown in the margin.[1] The corresponding sections of the Revenue Act of 1932 are substantially the same.

---

[1] SEC. 144. WITHHOLDING OF TAX AT SOURCE.

(a) *Tax-free covenant bonds.*—

(1) REQUIREMENT OF WITHHOLDING.—In any case where bonds, mortgages, or deeds of trust, or other similar obligations of a corporation contain a contract or provision by which the obligor agrees to pay any portion of the tax imposed by this title upon the obligee, or to reimburse the obligee for any portion of the tax, or to pay the interest without deduction for any tax which the obligor may be required or permitted to pay thereon, or to retain therefrom under any law of the United States, the obligor shall deduct and withhold a tax equal to 2 per centum of the interest upon such bonds, mortgages, deeds of trust, or other obligations, whether such interest is payable annually or at shorter or longer periods, if payable to an individual, a partnership, or a foreign corporation not engaged in trade or business within the United States and not having any office or place of business therein : *Provided,* That if the liability assumed by the obligor does not exceed 2 per centum of the interest, then the deduction and withholding shall, after the date of the enactment of this Act, be at the following rates : (A) 5 per centum in the case of a nonresident alien individual, or of any partnership not engaged in trade or business within the United States and not having any office or place of business therein and composed in whole or in part of nonresident aliens, (B) 12 per centum in the case of such a foreign corporation, and (C) 2 per centum in the case of other individuals and partnerships : *Provided further,* That if the owners of such obligations are not known to the withholding agent the Commissioner may authorize such deduction and withholding to be at the rate of 2 per centum, or, if the liability assumed by the obligor does not exceed 2 per centum of the interest, then at the rate of 5 per centum.

\* \* \* \* \* \* \*

(c) RETURN AND PAYMENT.—Every person required to deduct and withhold any tax under this section shall make return thereof on or before March 15 of each year and shall on or before June 15, in lieu of the time prescribed in section 56, pay the tax to the official of the United States Government authorized to receive it. Every such person is hereby made liable for such tax and is hereby indemnified against the claims and demands of any person for the amount of any payments made in accordance with the provisions of this section.

(d) INCOME OF RECIPIENT.—Income upon which any tax is required to be withheld at the source under this section shall be included in the return of the recipient of such income, but any amount of tax so withheld shall be credited against the amount of income tax as computed in such return.

\* \* \* \* \* \* \*

SEC. 291. FAILURE TO FILE RETURN.

In case of any failure to make and file a return required by this title, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, 25 per centum of the tax shall be added to the tax, except that when a return is filed after such time and it is shown that the failure to file it was due to reasonable cause and not due to wilful neglect no such addition shall be made to the tax. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3176 of the Revised Statutes, as amended.

Petitioner contends that all of the interest here involved was "payable to" the Union Trust Co., a domestic corporation, either in its own right or as fiduciary; that no other person or corporation had any right to collect the same or any part thereof; that a payment of the interest or any part thereof to any person or corporation other than the Union Trust Co. would not have discharged the mortgagor's legal liability; that the withholding provisions of the Revenue Acts of 1928 and 1932 do not apply to payments to a domestic corporation; and that it is not liable, therefore, for the deficiencies and penalties.

Respondent contends that the Union Trust Co. did not receive the interest payments in its own right; that the company had executed a written declaration of trust which specifically stated that the mortgage was held in trust by it; that the interest payments were necessarily received by it as trustee, with the obligation to distribute to those entitled to receive; and that the collection and distribution of these payments by the trust company did not relieve petitioner of its liability for tax as a withholding agent.

The dispute here involved arises out of the provisions in the mortgage executed by petitioner to the Union Trust Co. wherein it agreed to pay the Federal income tax of the holder or holders of the bonds up to an amount not in excess of 2 percent per annum of the interest paid. Under the withholding provisions of the statute petitioner was liable to pay the income tax on this interest "if payable to an individual, a partnership, or a foreign corporation not engaged in trade or business within the United States and not having any office or place of business therein." No withholding is required in the case of bonds owned by domestic corporations, as such corporations are not entitled to claim the 2 percent credit for tax paid at the source. Art. 763, Regulations 74 and Regulations 77.

The laws of Pennsylvania in effect at the time the mortgage here involved was executed require that trust companies "shall keep all trust funds and investments separate and apart from the assets of the companies, and all investments made by the said companies as fiduciaries shall be so designated as that the trust to which such investment shall belong shall be clearly known." Act of April 6, 1925, P. L. 152, § 1, amending the Act of May 9, 1889, P. L. 159, § 1, which in turn amended the Act of April 29, 1874, P. L. 73. They also provide, however, that trust companies may assign to various trust estates "participation in a general trust fund of mortgages upon real estate securing bonds, in which case it shall be a sufficient compliance with the provisions of this section for the company to designate clearly on its records" the mortgages, the names of the participating trust estates, and the amounts of their respective participations; that the company may repurchase mortgages from the fund and substitute other mortgages therefor; and that no participat-

ing estate shall be deemed to have individual ownership in any mortgage in the fund. Act of April 11, 1929, P. L. 512.

In discussing these statutory provisions in *In re Guthrie's Estate*, 182 Atl. 248, the Supreme Court of Pennsylvania stated:

> * * * If designation on the company's records is sufficient in the case of a participation pool consisting of a number of mortgages, it must likewise be sufficient where the participation is by a number of estates in but a single mortgage. It is plain that the Legislature saw fit to permit an exception to the rule in the case of participation in a pool of a number of mortgages because such pools could not be successfully operated otherwise. It is equally plain that the exception is no less necessary to the successful operation of participations in single mortgages, and that the legislative intention must therefore have been to include the latter within the exception. The distinction is between mortgages in which participation is allotted and those in which there is no participation. The single mortgage participation scheme is generically not distinguishable from that in which the participation is in a larger pool. Permission with regard to the greater must include permission as to the lesser.

Here the Union Trust Co. allotted participation in a single mortgage to a number of estates of individuals for which it was acting as fiduciary, and executed a declaration of trust wherein it stated that it was holding the mortgage and accompanying bond in trust for the several estates interested therein to the extent of the contribution of each of the trust estates towards the principal thereof. In compliance with the statutory provisions above mentioned, the Union Trust Co. made notations on its records of the funds invested by the various estates in the mortgage, and as installments of interest were received from petitioner they were distributed among these estates in accordance with their participations.

Under the stipulated facts we are unable to agree with petitioner's contention that the Union Trust Co. received the interest here involved in its own right. "The provisions of a mortgage are not personal to the party named in it as mortgagee, but are for the benefit and security of the real owner of the debt thereby secured." 41 C. J. 376. After the execution of the declaration of trust, the Union Trust Co. held the mortgage in trust for those estates which had contributed toward the principal of the loan, and was required by the laws of Pennsylvania to keep their respective interests in principal and interest separate and distinct from its own corporate assets. That is why, to use the language of the stipulation, "After the delivery of said mortgage the said Union Trust Company allocated various portions thereof to various estates of individuals for which it was guardian, trustee, agent or other fiduciary" and as "the semi-annual installments of interest were paid * * * distributed among the various estates * * * such portions of the interest payments as were applicable to such estates by reason of the allocation of their funds to said mortgage." In our opinion no further discussion is

necessary to show that the Union Trust Co. did not receive the interest in its own right.

Petitioner's contention that the withholding provisions of the statute are not applicable because the interest payments were made to a domestic corporation, as guardian, trustee, agent, or other fiduciary remains to be considered. In support of this contention petitioner argues that the Union Trust Co., as fiduciary, had the legal ownership and control of the mortgage and was entitled to the interest thereon, and that under the Pennsylvania law the estates participating in an investment "Pool" have no "individual ownership in any bond or mortgage in such fund." The mortgage here involved was executed for the purpose of securing payment of the bond or bonds issued by petitioner. The bond was the primary contract to pay, and the mortgage was simply a separate contract to secure payment. 11 C. J. S. 399. The transfer of a part of a debt secured by a mortgage carries with it a proportionate interest in the mortgage and the security which it affords. 41 C. J. 674, 675. While it may be true that petitioner was justified in paying the interest to the Union Trust Co., the latter, after the execution of the declaration of trust, was merely an agency for collecting and distributing it to the estates entitled to receive it because of investments in the mortgage indebtedness. The fact that these estates had no "individual ownership" in the bond or mortgage is immaterial. The important factor is that as participants in the loan secured by the mortgage they were entitled to receive their aliquot part of the interest paid, and did receive it. It was income of the estates, and not of the trustee or other fiduciary, even though the trustee or other fiduciary might be required to pay the tax resulting from its receipt on behalf of the estates for which it acted. The payments of interest by petitioner to a domestic corporation which was under obligation to distribute it to estates to which it rightfully belonged, and for which the corporation was acting as trustee or other fiduciary, did not relieve petitioner of its liability to pay the Federal income tax under the tax free covenant contained in the mortgage. The trust company was under no obligation to report this income for Federal income tax in its corporate income tax return. Having received the interest, the estates were required by the provisions of section 144 (d) of the Revenue Act of 1928 and 143 (d) of the Revenue Act of 1932 to include it in their returns (whether filed by them or by fiduciaries acting for them) and were entitled to claim the credits provided for in these sections. They can not be deprived of such credits because their income is included in returns filed for them by a corporate trustee or other fiduciary. Individual income tax returns, Forms 1040 and 1040-A, and fiduciary income tax return, Form 1041, specifically provide for a credit for taxes paid at source.

It is our conclusion that the interest here involved was not payable to a domestic corporation and that respondent correctly determined that, under the withholding provisions of the Revenue Acts of 1928 and 1932, petitioner was liable for tax on the interest paid to the various estates. Inasmuch as petitioner did not file the returns required by section 144 (c) of the Revenue Act of 1928 and 143 (c) of the Revenue Act of 1932, the imposition of the 25 percent addition to tax provided for in section 291, *supra*, is mandatory. *John Ernest Goldring*, 36 B. T. A. 779; *Taylor Securities, Inc.*, 40 B. T. A. 696, 703.

*Judgment will be entered for the respondent.*

